**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |  |
|---|---|---|---|
| MARTHA AKERS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 08-1525 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 92 |
| | : | | |
| LIBERTY MUTUAL GROUP, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING THE DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

In this matter, the *pro se* plaintiff had a homeowner's insurance policy with the

defendant, Liberty Mutual Group.  After a fire damaged the plaintiff's insured property, the

plaintiff filed an insurance claim, which the defendant subsequently denied.  The plaintiff

commenced this action, alleging that the defendant breached the insurance contract.  The matter

is now before the court on the defendant's second motion for summary judgment.  Because the

defendant provides uncontroverted evidence that the plaintiff breached the insurance contract,

thus rendering it void, the court grants the defendant's motion for summary judgment.

**II.  FACTUAL & PROCEDURAL BACKGROUND**

The plaintiff owned a house located at 8165 East Beach Drive N.W., Washington D.C.

("the property").  Compl. ¶ 4.  The defendant insured the property pursuant to a homeowner's

insurance policy in effect from November 24, 2006 to November 24, 2007 ("the policy").  *See*

*generally* Def.'s Second Mot. for Summ. J. ("Def.'s Mot.").

According to the policy, in the event of a loss, the plaintiff was required to (1) provide the defendant with prompt notice of the loss, (2) protect the property from further damage, (3) prepare an inventory of damaged personal property and (4) make the property, pertinent records and the plaintiff available to the defendant as often as reasonably requested.  Def.'s Mot., Ex. 1 ("Homeowner's Policy") at 8-9.  Under the policy, the plaintiff specifically authorized the defendant to make copies of any documents that it requested.  *Id.*  She also agreed to submit to an examination under oath, certifying the same with her signature.  *Id.*  Finally, the policy specified that it became void if the insured party "[i]ntentionally concealed or misrepresented any material fact or circumstance; [e]ngaged in fraudulent conduct; or [m]ade false statements." *Id.* at 15.

On or about July 5, 2007, the property sustained fire damage and shortly thereafter, the plaintiff submitted an insurance claim.  Compl. ¶ 5; Def.'s Mot. at 4.  As a result, the defendant commenced an investigation into the cause and circumstances surrounding the fire.  Def.'s Mot. at 4.  After initial verbal communication with the plaintiff, the defendant scheduled a meeting with the plaintiff at the property to assess the damage but failed to gain entry inside the premises because the plaintiff did not bring the key to the meeting.  Def.'s Mot., Ex. 7 at 21.  At this point, the defendant initiated formal inquiries regarding the circumstances of the fire, the plaintiff's whereabouts at the time of the fire and her financial status.  Def.'s Mot. at 4.  As part of this investigation, the plaintiff participated in a recorded interview approximately two weeks after the fire.  *Id.* at 4-5.

During that interview, the plaintiff affirmed the accuracy of information that she had given on her insurance application, namely, that she had been employed by a brokerage firm,

Francis & Associates, as an administrator for twelve years and that she earned an annual income of approximately $100,000 to $120,000. *Id.*, Ex. 3. She declined, however, to provide her employer's contact information. *Id.* She also stated that she owned two other apartment buildings in the District of Columbia, one for personal use and the other for commercial use. *Id.* The plaintiff refused to state the purchase price on the insured property when asked, and she gave vague answers as to her whereabouts at the time of the fire. *Id.* In response to the defendant's request for all documentation relevant to the fire and the plaintiff's status as a resident of the property (for instance, utility bills), the plaintiff produced four utility bills and one lease agreement. *Id.*, Ex. 4.

According to the defendant, it tried but was unable to corroborate the plaintiff's professional relationship with Francis & Associates. *Id.* at 6. The defendant did, however, discover that the plaintiff had stated in a 2003 bankruptcy proceeding that she had been unemployed since 1998. *Id.* at 6-7; *id.* Ex. 5.

As a result of the ambiguities surrounding the plaintiff's interview, the defendant requested that the plaintiff submit to a formal Examination Under Oath ("EUO") and produce certain documents, including her tax returns. *See generally* Def.'s Mot., Ex. 7 (EUO). At the EUO in August 2007, the plaintiff allegedly produced two utility bills, tore up other bills that she had brought with her to the EUO and refused to produce additional documents. *Id.* at 56-57. According to the defendant, the plaintiff again stated that her employer was Francis & Associates but refused to corroborate that statement. *Id.* at 5. Furthermore, she asserted that she had no outstanding mortgages on her properties, although she had listed her mortgage obligations in the 2003 bankruptcy proceedings. *Id.* at 52-53.

On September 19, 2007, the defendant denied the plaintiff's insurance claim based on her alleged failure to fulfill her duties as the insured party.  Def.'s Mot. at 1, 15.  More specifically, the defendant explained that the plaintiff had rendered the policy void because she engaged "in concealment, fraud, material misrepresentation, false statements and non-cooperation." *Id.* at 3, 15.  According to the defendant, it based its decision on the "totality of the circumstances," including the plaintiff's "refusal to produce requested documents, her false statements regarding her income, finances and debt, and her apparent obstruction of the Defendant's inquiry into her alleged employment, income, debt and financial motivations for the subject loss." *Id.* at 15.

In July 2008, the plaintiff commenced this action against the defendant, alleging breach of contract and demanding specific performance.  *See generally* Compl.  The defendant moved for summary judgment, but the court denied the motion without prejudice in light of a technical error committed by the defendant.  *See generally* Mem. Op. (Sept. 28, 2010).  The defendant has since filed a second motion for summary judgment.  *See generally* Def.'s Mot.  When the plaintiff failed to respond in a timely fashion, the defendant filed a request to treat the second motion for summary judgment as conceded.  *See* Def.'s Request to Treat Second Mot. for Summ. J. as Conceded, and for Ruling.  After seeking leave to late-file, the plaintiff filed her opposition to the defendant's motion.[1]  The court has reviewed and considered her response in evaluating

---

[1]    When the plaintiff failed to respond to the summary judgment motion in a timely manner, the court ordered her to respond within an extended deadline.  Order (Aug. 5, 2011) at 1.  The plaintiff then moved for a further extension, which the court denied on procedural grounds.  Minute Order (Sept. 7, 2011).  The plaintiff moved the court to reconsider that decision, Pl.'s Mot. for Recons. (Sept. 21, 2011), but before the court was able to rule on the motion for an extension of time, the plaintiff filed a "motion to file a reply out of time," attaching two versions of the opposition, each one-and-a-half pages in length, *see generally* Pl.'s Mot. for Relief to File the Response to Def.'s Mot. Out of Time (Oct. 5, 2011).  The court considers the plaintiff's oppositions collectively as the plaintiff's response to the defendant's motion for summary judgment, and cites to the attachments as "Pl.'s 1st Opp'n" and "Pl.'s 2d Opp'n," respectively.

the defendant's motion for summary judgment.  With the defendant's motion now ripe for

consideration, the court turns to the parties' arguments and the applicable legal standards.

## III.   ANALYSIS

### A.   Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are

"material," a court must look to the substantive law on which each claim rests.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" is one whose resolution

could establish an element of a claim or defense and, therefore, affect the outcome of the action.

*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on

summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B. The Court Grants the Defendant's Motion for Summary Judgment

The defendant contends that it is entitled to summary judgment because the plaintiff violated the relevant provisions of the insurance policy, thereby rendering the contract void. *See generally* Def.'s Mot. More specifically, the defendant argues, *inter alia*, that the plaintiff purposefully misrepresented her employment history, income and indebtedness and refused to produce documents requested by the defendant. *Id.* In response, the plaintiff asserts that "no false, incomplete, intent to deceive or misleading information was submitted during [her] application for insurance policy, [including] after the fire damage" and that "she compl[ied] with the policy provisions . . . at all times" and provided all "recovered documents  to the [d]efendant." Pl.'s 1st Opp'n ¶ 6.[2] In support of her opposition, the plaintiff lists various rules of federal evidence, local rules, federal and Canadian case law on the rules of evidence, as well as a treatise on evidence. *See generally* Pl.'s 2d Opp'n.

---

[2]     The plaintiff erroneously numbered paragraph 6 as paragraph 3. The court refers to the paragraphs in their sequential order.

Courts have universally recognized the validity of insurance policy provisions voiding the policy in cases of concealment or misrepresentation of a material fact by the insured.  *See Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 94-97 (1884).  Indeed, the Supreme Court has recognized that provisions in insurance policies that require an insured party "to submit [herself] to an examination under oath" are necessary "to enable the company to possess itself of all knowledge, and all information" pertinent to a claim.  *Id.* at 94-95.  Thus, the Supreme Court has deemed the concealment of relevant information or making of false statements regarding purchase of an insurance policy to be "a breach of the condition of the policy" and has observed that they may "constitute[] a bar to the recovery of the insurance."  *Id.* at 97.  Similarly, insurance policies routinely require both that the insurer be authorized to examine any matter that is material to its liability, *see Gipps Brewing Corp. v. Cent. Mfr. Mut. Ins. Co.*, 147 F.2d 6, 13-14 (7th Cir. 1945), and that the insured party cooperate with any such examination, *Stover v. Aetna Cas. & Sur. Co.*, 658 F. Supp. 156, 160 (S.D.W.Va. 1987).

An insured party's compliance with insurance policy provisions is viewed as a condition precedent to indemnification.  *Id.* at 91; *Loughlin v. Firemen's Ins. Co. of Wash.*, 186 F.2d 357, 357 (D.C. Cir. 1950).  Therefore, an insured party's failure to cooperate with the insurer in investigating an insurance claim has been held to be a material breach of the contract, rendering the policy void.  *Claflin*, 110 U.S. at 83-97; *Hudson Tire Mart, Inc. v. Aetna Cas. & Sur. Co.*, 518 F.2d 671, 674 (2d Cir. 1975).  This includes cases in which the plaintiff (1) refused to produce documents, *Taubman v. Allied Fire Ins. Co. of Utica*, 160 F.2d 157, 160 (4th Cir. 1947); (2) refused to answer material questions during an examination, *Robinson v. Nat'l Auto & Cas. Ins. Co.*, 282 P.2d 930, 933 (Cal. Ct. App. 1955); and (3) gave no response or vague answers

7

about his financial status and refused to turn over financial documents, *Stover*, 658 F. Supp. at 160.

Here, the terms of the insurance policy required the plaintiff to show the damaged property to the defendant, provide the defendant "with records and documents [that the defendant] request[ed] and permit [the defendant] to make copies." Homeowner's Policy at 9. Furthermore, the policy becomes void "if, whether before or after a loss, an 'insured' has: (a) [i]ntentionally concealed or misrepresented any material fact or circumstance; (b) engaged in fraudulent conduct; or (c) made false statements; relating to this insurance." *Id*. at 15.

The defendant provides documentary evidence[3] from which a reasonable juror may conclude that the plaintiff provided conflicting, incomplete or misleading responses to questions raised during the defendant's investigation. *Id*. For instance, the defendant points out that the plaintiff stated under oath that she was employed by Francis & Associates but then refused to corroborate that employment. EUO at 5. Indeed, she refused to give the defendant her employer's address and claimed to not recall her own work telephone number. *Id*. This appears to contradict the plaintiff's prior representations – both in a 2003 bankruptcy proceeding and in an affidavit filed by the plaintiff in the Superior Court of the District of Columbia – where she stated that she had been unemployed and without income since 1998. *Id.*, Ex. 5 & 10.

Similarly, the defendant's evidence also suggests that the plaintiff misrepresented her pending mortgage obligations at the time of the examination under oath. EUO at 51-52. At the sworn examination, the plaintiff testified that she did not have any mortgage obligations on a property she owned on Fairmont Street in Washington, D.C. *Id*. Yet five months later, in a

---

[3]     The defendant's evidence includes, *inter alia*, the plaintiff's unsworn recorded statements, correspondence, mortgage and bank records, tax return statements and bankruptcy court records.

bankruptcy proceeding, she listed that same property as having a mortgage in the amount of $38,900. *Id.*

Furthermore, the defendant provides evidence to show that the plaintiff refused to produce the documents requested by the defendant. According to the transcript of the plaintiff's sworn examination, the plaintiff refused to give the defendant the relevant utility bills. *Id.* at 15. Indeed, the plaintiff agreed that at the time of the examination, she was "refusing . . . to produce the utility bills that [she had with her that day] that would indicate whether or not [the] property was occupied back in 2006." *Id.* at 16. She also admitted that she did not produce her 2007 utility bills, although the defendant had requested such documents prior to the examination. *Id.* at 17; *see also* Def.'s Mot., Ex. 6 (Aug. 14, 2007 Letter Requesting Documents).

In light of the evidence cited by the defendants (of which these are only a few examples), a reasonable juror could conclude that the plaintiff breached the insurance policy by not carrying out her duties as the insured party, thereby rendering the policy void. *See Claflin*, 110 U.S. at 96-97 (ruling that providing false statements during the purchase of a property was a breach of the policy); *Taubman*, 160 F.2d at 162 (holding that an insured party's refusal to produce requested documents constituted a breach of the insurance contract); *Stover*, 658 F. Supp. at 160 (concluding that an insured party's failure to provide clear answers regarding his financial status and his refusal to produce financial statements constituted a breach of insurance policy).

Turning then to the plaintiff's opposition, the court observes that as the nonmoving party, the plaintiff may not rely solely on her allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999); *Harding*, 9 F.3d at 154. Rather, the nonmoving party must present specific facts that would enable a jury to find in its favor. *Greene*, 164 F.3d at 675. If

9

the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).  Moreover, "evidence laying dormant in the record is not enough to allow a litigant to survive summary judgment, for the district court is not 'obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make his own analysis and determination of what may, or may not be a genuine issue of material disputed fact.'"  *Potter v. District of Columbia*, 558 F.3d 542, 550 (D.C. Cir. 2009) (quoting *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).

The plaintiff has offered nothing to refute the defendant's arguments and evidence.  *See generally* Pl.'s Opp'n 1 & 2.  Moreover, the plaintiff fails to provide the court with any evidence to support her assertions that she complied with her contractual duties as the insured party.  She provides no evidence of her employment at Francis & Associates for the term she specified to the defendant, nor an explanation of the discrepancy in her statement to the defendant and the statement to the bankruptcy court regarding her employment and income history.  She does not point to any evidence that would suggest that she cooperated with the investigation by providing the documents requested by the defendant, *i.e.* her tax return statements.  Instead, she merely provides the court with a discovery request, listing several of the defendant's employees that the plaintiff believes are likely to have discoverable information, as well as a list of utility bills she forwarded to the defendant on September 27, 2007 (a date after the defendant had already been denied her insurance claim).  *See generally* Pl.'s Opp'n.  The plaintiff fails to explain the significance or the relevance of these documents.  Indeed, the plaintiff does not even provide the court with her own sworn statement or a statement made under penalty of perjury that would demonstrate specific facts to counter the defendant's evidence.

10

As this court has previously noted, the plaintiff is a sophisticated *pro se* litigant, well-versed in litigation and the rules of this court; indeed, she has prosecuted up to four cases before this court at one time.  *See Akers v. Liberty Mut. Group*, Civ. No. 08-1525; *Akers v. Beal Bank*, Civ. No. 09-724; *Akers v. Winward Capital Corp*., Civ. No. 10-1300; *Akers v. Winward Capital Corp*., Civ. No. 11-674.  She has been repeatedly warned, in this case and others, that she must familiarize herself with the rules of procedure and actively prosecute her case or risk dismissal. *See*, *e.g.*, Mem. Order (Jan. 11, 2011) at 6 (describing the plaintiff's complete disengagement with the discovery process and warning the plaintiff that her "failure to participate in these proceedings will lead to the dismissal of her complaint"); *Akers v. Liberty Mut. Group*, Civ. No. 08-1525, Hr'g Tr. (Oct. 8, 2009) at 13 (noting that the court found the plaintiff to be "quite capable" and that "from this point forward" she was going to have to study the rules to ensure compliance).  Indeed, at opportune moments throughout this litigation, the plaintiff has proven to be quite skilled in maneuvering the intricacies of civil procedure.

Although the court recognizes the general principle that *pro se* litigants are provided with some latitude in maneuvering through the trial process, *Moore v. Agency for Int'l Dev.*, 994, F.2d 874, 876 (D.C. Cir. 1993), this does not curtail the court's discretion to rule in favor of the defendant when the plaintiff has failed to prosecute her complaint and follow the federal rules. FED. R. CIV. P. 41(b); LCvR 83.23; *see also* Mem. Op. (May 20, 2011) at 6-7.  Thus, in ruling on the defendant's motion for summary judgment, the court considers not only the evidence advanced by the defendant but also the procedural posture of this case and the plaintiff's repeated failure to abide by the court's generous deadlines.  As such, the court declines to overlook the plaintiff's failure to provide any evidence in support of her allegations or to refute

11

the defendant's persuasive arguments and evidence.  *See* FED. R. CIV. P. 56(c) (noting that a

party can succeed on a summary judgment motion by showing that the adverse party has not

produced admissible evidence that establishes a genuine dispute of fact, and stating that "the

court need consider only the cited materials" when ruling on a summary judgment motion).

Accordingly, the court grants the defendant's motion for summary judgment.


## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary

judgment.  An Order consistent with this Memorandum Opinion is separately and

contemporaneously issued this 9th day of March, 2012.


RICARDO M. URBINA
United States District Judge